# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VACATION CLUB SERVICES, INC.,**

      **Plaintiff,**

-vs-                                                      Case No. 6:10-cv-247-Orl-31GJK

**GIOVANNI RODRIGUEZ and GLOBAL
RESORT MANAGEMENT, LLC,**

      **Defendants.**

_____

# ORDER AND PRELIMINARY INJUNCTION

This matter came before the Court upon consideration of Plaintiff's, Vacation Club Services, Inc. ("Plaintiff"), Emergency Motion for Preliminary Injunction (Doc. 3), which the Court construed as a motion to convert temporary restraining into preliminary injunction ("Motion to Convert Temporary Restraining Order") (Doc. 6 at 3), and Plaintiff's Motion to Modify Temporary Restraining Order (Doc. 15). Defendants, Giovanni Rodriguez ("Rodriguez") and Global Resort Management, LLC ("Global") (collectively, "Defendants"), failed to respond to the motions. The Court held a hearing on Tuesday, February 23, 2009 (Doc. 22).

## I. Overview

Plaintiff filed suit at approximately 9:30 a.m. on February 11, 2010, alleging, *inter alia*, that Rodriguez, one of its employees, surreptitiously obtained a confidential database of Plaintiff's timeshare members. Rodriguez allegedly provided the database to one or more third-parties that are in the business of re-selling timeshare properties, including, Defendant Global Resort

Management, LLC ("Global"). Subsequent to Rodriguez' actions,[1] Plaintiff's members began to receive solicitations from Global.

At approximately 1:30 p.m. on February 11, 2010, the Court entered its Temporary Restraining Order, which restrained Defendants from, *inter alia*, using Plaintiff's database to contact or solicit Plaintiff's current or prospective timeshare members (Doc. 6 at 2). The Court then construed Plaintiff's Emergency Motion for Preliminary Injunction as a motion to convert the temporary restraining order into a preliminary injunction and set a hearing on same for Tuesday, February 23, 2010 (Doc. 6 at 3). The Court further ordered Plaintiff to expeditiously serve Defendants with a copy of all papers currently on file with the Court, including a copy of the Court's order and notice of hearing (Doc. 6 at 2). Finally, the Court established a deadline of Friday, February 19, 2010 for Defendants to respond to Plaintiff's Motion to Convert Temporary Restraining Order.

Consistent with the Court's Order, Plaintiff served Global at 4:00 p.m. on February 11, 2010, and diligently began to attempt service on Rodriguez (Doc. 14-2).[2] One week after Global

---

[1] Once Plaintiff discovered that Rodriguez had emailed the database from his work computer to his personal email address and confronted him with that information, it terminated Rodriguez' employment.

[2] Between February 11, 2010 and February 17, 2010, Plaintiff attempted personal service on Rodriguez no less than fifteen times. Based on the process servers' affidavits, it is clear that Rodriguez has actively been attempting to evade service (Doc. 14-2). On February 19, 2010, however, it appears the process server was able to effect "drop-service" on Rodriguez (Doc. 20). After locating a vehicle registered to Rodriguez that was parked in the driveway of Rodriguez' home, the process server repeatedly knocked on the door; his knocking summoned a man to the window, but the man refused to open the door (Doc. 20). The process server then stated his presence and purpose, and proceeded to place the relevant documents at the door of the home (Doc. 20).

Plaintiff's counsel represented at the February 23, 2010 hearing that he had been in contact

was served, it disclosed to Plaintiff that it is was, in fact, in possession of a list of Plaintiff's timeshare members but Global informed Plaintiff that it had acquired the database from a third-party and not Rodriguez.  Global assured Plaintiff that it had no association with Rodriguez and that it would, or already had, ceased using the database that it had acquired (which apparently constituted only a fraction of the database that Rodriguez allegedly obtained).  Global, however, apparently refused to disclose the third-party from whom it purchased the portion of Plaintiff's database (Doc. 15-1).

Because Global refused to identify the third-party from whom it purchased a portion of Plaintiff's database, on Friday, February 19, 2010, Plaintiff filed its Emergency Motion to Modify Temporary Restraining Order (Doc. 15) and moved the Court to require Global to disclose its source.  The Court deferred ruling on the motion and entered its Order and Notice of Hearing, which "strongly encouraged" the parties to reach agreement on the disclosure issue prior to the hearing previously set for Tuesday, February 23, 2010 (Doc. 16 at 1).  If necessary, however, the Court agreed to hear additional argument at the hearing (Doc. 16 at 1).  Finally, the Court directed Plaintiff to serve Global with a copy of the Court's Order and Notice of Hearing by no later than 2:00 p.m. that same day (i.e., Friday, February 19, 2010).  Plaintiff effected service of same at 1:26 p.m.

Notwithstanding the fact that it had been served with two notices of hearing and had obtained counsel, Global failed to appear at the Tuesday, February 23, 2010 hearing.  Consequently, the Court telephoned Global's counsel, Philip Bonus, Esq., in open court.  Mr.

---

with James Shepherd, Esq., who indicated that he may agree to represent Rodriguez.

Bonus proceeded to represent that Global purchased its portion of Plaintiff's database from a third-party named Jeff Morris; that it no relationship or association whatsoever with Rodriguez; that it had only used the database for approximately one week before receiving Plaintiff's initial demand letter and then ceased using the database; that it recently turned over its one and only copy of the database to Mr. Bonus; that the database contained approximately 25,000 of Plaintiff's timeshare members; and that before ceasing its use of Plaintiff's database, some of Plaintiff's members had informed Global's sale representatives that they had recently been solicited by other timeshare re-sellers, suggesting that Plaintiff's database may have been sold to and used by entities other than Global. Based on these representations, the Court ordered Mr. Bonus to submit the disk containing the portion of Plaintiff's database to the registry of the Court.

The issue now before the Court is whether to convert its Temporary Restraining Order (Doc. 6) into a preliminary injunction.

## II. Standard of Review

To obtain a preliminary injunction, a party must clearly establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the harm an injunction may cause the nonmovant (i.e., the balance of the equities tips in the movant's favor); and (4) that granting the injunction is not adverse to the public interest. *See*, *e.g.*, *Winter v. Natural Res. Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008) (citations omitted); *Church v. City of Huntsville*, 30 F.3d 1332, 1341-42 (11th Cir. 1994) (citation omitted).

"It goes without saying that an injunction is an equitable remedy" that should only issue where the intervention of a court of equity "is essential in order effectually to protect property

rights against injuries irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982) (citations and quotations omitted). Indeed, a preliminary injunction, in particular, is "an extraordinary and drastic remedy not to be granted unless the movant clearly establish[es] the 'burden of persuasion' as to each of the . . . prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). Furthermore, the granting of a preliminary injunction is "the exception rather than the rule," and the movant must clearly carry the burden of persuasion." *Id*. (citation and quotation omitted).

Nevertheless, the Court need not find that the "evidence positively guarantees a final verdict" in the movant's favor. *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). And at "the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Id*. (citation and quotation omitted).

**III. Analysis**

Based on the present record, as well as oral argument and the representations of counsel at the February 23, 2010 hearing, the Court will convert its Temporary Restraining Order into a preliminary junction. Plaintiff clearly has a substantial likelihood of success on the merits of its claims and will suffer irreparable harm if an injunction is not issued prior to judgment. As stated in the Court's Temporary Restraining Order, Plaintiff's database is clearly confidential information and its alleged procurement by Rodriguez violated, *inter alia*, Rodriguez' employment contract. Furthermore, a third-party's unauthorized use of Plaintiff's confidential database to solicit Plaintiff's members is a breach of the members' right to privacy that has and will likely continue

to cause irreparable harm to Plaintiff's goodwill. The threatened harm to Plaintiff's good will significantly outweighs any harm to Defendants caused by the entry of a preliminary injunction, and the entry of same would not be adverse to (and actually advances) the public's interest in privacy and in business' ability to maintain confidential information about their customers. Accordingly, the Court concludes that Plaintiff is entitled to a preliminary injunction.

**IV. Conclusion**

Based on the foregoing, it is

**ORDERED** and **ADJUDGED** that:

1. Plaintiff's Motion to Convert Temporary Restraining Order (Doc. 3) is **GRANTED**.

2. Defendants, Giovanni Rodriguez and Global Resort Management, L.L.C., and their officers, agents, servants and employees, are hereby **ENJOINED** from using Plaintiff's trade secrets or confidential information – including any database or list of Plaintiff's members or prospective members – for any purpose, including, but not limited, contacting or soliciting Plaintiff's current or prospective timeshare members, or providing same to any third-party;

3. As stated in open court, counsel for Global Resort Management, L.L.C., Mr. Phillip Bonus, Esq. shall immediately submit the disk containing a portion of Plaintiff's database to the registry of the Court;

4. Plaintiff is authorized to set and take the Rule 30(b)(6) deposition of Global Resort Management, L.L.C., which shall make its representative available for deposition on or before Friday, March 5, 2010. Furthermore, Global shall produce at the deposition all documents responsive to Plaintiff's Notice of Deposition and Subpoena *duces tecum*;

5.  Plaintiff is further authorized to set and take the deposition of Giovanni Rodriguez at 9:00 a.m. on Thursday, March 4, 2010 at the offices of Foley & Lardner, L.L.P, 111 N. Orange, Ave., Suite 1800, Orlando, Florida 32801;[3]

6.  Defendant Giovanni Rodriguez is hereby advised that his failure to appear at the deposition on Thursday, March 4, 2010 will result in contempt proceedings and the imposition of appropriate sanctions; and

7.  Plaintiff's Motion to Modify Temporary Restraining Order (Doc. 15) is **DENIED** as **MOOT**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 24, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[3]Plaintiff shall promptly serve Rodriguez with a copy of this Order and its Notice of Deposition by mail to his home address and by leaving a copy at his residence and on the automobile registered in his name. The Clerk of the Court is also directed to mail a copy of this Order to Mr. Rodriguez at 9429 Daney Street, Gotha, Florida 34734.